NORTH CAROLINA

EDGECOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS ___104___.

ESTATE OF DOROTHY LYONS, by and )
through its Administrator, Misheer Davail )
Lyons; and ESTATE OF EUGENE LYONS, )
and through its Administrator, Cedric Jamaal )
Lyons, )
)
                              Plaintiffs, )
)
v. )
)
CSX TRANSPORTATION, INC.; CSX )
CORPORATION; TOWN OF WHITAKERS, )
NORTH CAROLINA; NASH COUNTY, )
NORTH CAROLINA; and EDGECOMBE )
COUNTY, NORTH CAROLINA. )
)
                              Defendants. )

**COMPLAINT**
(**JURY TRIAL DEMANDED**)

**NOW COME** the Plaintiffs, by and through undersigned counsel, complaining of the

Defendants by alleging and saying as follows:

## PARTIES

1.     Eugene Lyons and Dorothy Lyons (hereinafter "Decedents"), who died in the

manner hereinafter alleged, were citizens and residents of Edgecombe County, North Carolina at

all times relevant to this lawsuit and up until the time of their death on January 14, 2018.

2.     Misheer Davail Lyons is a citizen and resident of Wake County, North Carolina

and is the duly qualified Administrator of the Plaintiff Estate of Dorothy Lyons per the Letters of

Administration issued by the Edgecombe County Clerk of Superior Court. This is an action

brought by and through said estate and administrator pursuant to the North Carolina Wrongful

Death Statute, § 28A-18-2.

3. Cedric Jamaal Lyons is a citizen and resident of Prince William County, Virginia and is the duly qualified Administrator of the Plaintiff Estate of Eugene Lyons per the Letters of Administration issued by the Edgecombe County Clerk of Superior Court. This is an action brought by and through said estate and administrator pursuant to the North Carolina Wrongful Death Statute, § 28A-18-2.

4. Defendant CSX Transportation, Inc. is a corporation organized under the laws of Virginia with its principal place of business in Jacksonville, Florida; it does business in and owns/operates lines of railway in the State of North Carolina, and it holds a certificate of authority to transact business in North Carolina. It can be served with process through its designated Registered Agent: CT Corporation System, 160 Lake Court, Suite 200, Raleigh, NC 27615.

5. Defendant CSX Corporation is a corporation organized under the laws of Virginia with its principle place of business in Jacksonville, Florida; it does business in and owns/operates lines of railway in the State of North Carolina, and it should hold a certificate of authority to transact business in North Carolina. It can be served with process through its designated Registered Agent: CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

6. Defendants CSX Transportation, Inc. and CSX Corporation will hereinafter be referred to collectively as the "Railroad Defendants." Each reference to the Railroad Defendants shall include CSX Transportation, Inc. and CSX Corporation as if each Defendant were individually referenced and each allegation was made against each Defendant.

7. Defendant Town of Whitakers, North Carolina is a chartered municipality under the laws of the State of North Carolina, located in Edgecombe County and Nash County. This action is brought against the Defendant Town of Whitakers, North Carolina for negligently inspecting, repairing, designing, maintaining, and failing to report problems with signaling

devices, warning devices, preemption devices, crossing arms, streets, and roadways with respect to the railroad crossing involved in this action. Accordingly, Defendant Town of Whitakers, North Carolina does not enjoy immunity. Nevertheless, upon information and belief, to the extent the doctrines of sovereign, governmental, or other immunities apply to the claims stated herein, Defendant Town of Whitakers, North Carolina has waived sovereign, governmental, or other immunity through the purchase of one or more policies of liability insurance pursuant to N.C. Gen. Stat. § 153A-435, by purchasing a bond pursuant to N.C. Gen. Stat § 162-8, by participating in a local government risk pool pursuant to N.C. Gen. Stat. § 58-23-5, by settling similar actions or claims, or otherwise.

8.     Defendants Nash County, North Carolina and Edgecombe County, North Carolina are political subdivisions of the State of North Carolina. This action is brought against them for negligently inspecting, repairing, designing, maintaining, and failing to report problems with signaling devices, warning devices, preemption devices, crossing arms, streets, and roadways with respect to the railroad crossing involved in this action. Accordingly, they do not enjoy immunity. Nevertheless, upon information and belief, to the extent the doctrines of sovereign, governmental, or other immunities apply to the claims stated herein, these Defendants have waived sovereign, governmental, or other immunity through the purchase of one or more policies of liability insurance pursuant to N.C. Gen. Stat. § 153A-435, by purchasing a bond pursuant to N.C. Gen. Stat § 162-8, by participating in a local government risk pool pursuant to N.C. Gen. Stat. § 58-23-5, by settling similar actions or claims, or otherwise.

9.     At all times pertinent hereto, all employees of the Defendants were acting in their capacity as agents of the Defendants within the scope of their employment and authority and in the furtherance of the business of the Defendants. All the acts and omissions of the employees of

the Defendants are imputed to their respective employers, who are liable for such acts and omissions.

10. "Defendants" as used herein shall refer to all Defendants.

## JURISDICTION & VENUE

11. Defendants have received proper service before the Court pursuant to Rule 4 of the North Carolina Rules of Civil Procedure.

12. The Court has personal jurisdiction pursuant to N.C.G.S. § 1-75.4.

13. The Court has subject matter jurisdiction pursuant to N.C.G.S. § 7A-240 and N.C.G.S. §7A-243.

14. Jurisdiction is proper in this Court, in that the Plaintiffs' causes of action arose out of the Railroad Defendants transacting business in North Carolina, owning and using real estate in North Carolina, and committing tortious acts and omissions within North Carolina. The Railroad Defendants should also be subject to the same liabilities imposed on domestic corporations of like character. Further, the Plaintiffs' causes of action arose out of the Defendants committing tortious acts or omissions within North Carolina.

15. Venue is appropriate pursuant to N.C.G.S. §1-81 and §1-82.

16. Pursuant to 49 U.S.C. § 20106, this case is appropriately brought in the Superior Court of North Carolina rather than U.S. District Court. Plaintiffs reserve the right to amend this Complaint as needed to further establish why this case was appropriately brought in the Superior Court of North Carolina. All allegations herein related to the Railroad Defendants are based upon and should be interpreted to state causes of action seeking damages under North Carolina law for wrongful death, based upon one or more of the following:

> a. The Railroad Defendants failing to comply with the federal standard of care established by regulations or orders by the Secretary of Transportation (with

respect to railroad safety security matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. § 20106;

b.     The Railroad Defendants failing to comply with their own plans, rules, or standards that they created pursuant to a regulation or order issued by either of the Secretaries; and/or

c.     The Railroad Defendants failing to comply with North Carolina common law, State laws codified in the North Carolina General Statutes, State rules and regulations codified in the North Carolina General Statutes, State rules and regulations compiled in the North Carolina Register, North Carolina Administrative Code and State administrative or other orders that are not incompatible with subsection (a)(2) of 49 U.S.C. § 20106.

17.    All allegations set forth in this Complaint are based upon information and belief.

18.    All allegations set forth in each of the paragraphs in this Complaint are incorporated by reference into each of the other sections and paragraphs contained in this Complaint, as if fully set forth therein.

## FACTUAL ALLEGATIONS

19.    On January 14, 2018, at approximately 2:23 pm, Decedents died when their vehicle was struck by an Amtrak train at AAR/DOT Railroad Crossing Number 629680P (hereinafter "Railroad Crossing") on Nash Street, Whitakers, on the border of Nash County and Edgecombe County, North Carolina.

20.    The Railroad Crossing is collectively owned, operated and maintained by the Railroad Defendants.

21.    The Railroad Crossing has one singular track aligned North to South. USDOT records indicate that the Railroad Crossing is equipped with flashing incandescent lights on two posts, two round W10-1 signs, two gates, and two bells.

22.    As shown on the publicly available crossing inventories, before the January 14, 2018 crash that killed Decedents Eugene and Dorothy Lyons, it was reported "NONE" for the type

of train detection system installed at the Railroad Crossing. However, two days after the crash, the records were updated to reflect that a "Motion Detection" system was installed at the Railroad Crossing, apparently 48 hours after the crash. The date on the updated inventory record is "01/16/2018."

23. Nash Street is an East to West public highway.

24. On January 14, 2018, at approximately 2:23 pm, Decedent Eugene Lyons was driving eastbound on Nash Street headed to Messiah Baptist Church, where he was pastor, to retrieve an item he previously left at the church that morning. His wife, Decedent Dorothy Lyons, was present in the vehicle as a passenger. At the same time and place, an Amtrak train was headed southbound toward the Railroad Crossing.

25. As Decedent Eugene Lyons' vehicle approached the Railroad Crossing, the signal system (lights and gates) were not activated, indicating that it was safe to enter the crossing. As a result, Decedent Eugene Lyons continued to drive his vehicle into the crossing.

26. As the Lyons' vehicle entered the crossing, the Amtrak locomotive struck the vehicle.

27. On the day of the crash, the Rocky Mount Telegram in Rocky Mount, North Carolina reported that Decedent Dorothy Lyons was the driver; however, she was legally blind and was incapable of driving for three years prior to the crash. Chief Darrell Cofield of the Whitakers Police Department later confirmed that Decedent Eugene Lyons was the driver.

28. Also on January 14, 2018, the day of the crash, WRAL-TV in Raleigh, North Carolina reported that the "driver of the car attempted to beat the train after the stop arms had been lowered;" however, as evidenced by video of the collision, the gates at the Railroad Crossing did not function properly. In fact, the gate intended to block eastbound traffic on Nash Street was not

down when the car driven by Decedent Eugene Lyons entered the Railroad Crossing, and the Decedents Eugene and Dorothy Lyons were provided no warning of the approaching Amtrak train.

29.     Decedents Eugene and Dorothy Lyons were ejected from their vehicle upon impact. Both died at the scene of the collision.

## GENERAL LIABILITY ISSUES COMMON TO ALL DEFENDANTS

30.     The Defendants had a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case, the Defendants breached this duty by failing to exercise reasonable care. As a direct proximate result of the Defendants' breach of this duty, Plaintiffs suffered damages, as hereinafter alleged. All acts and omissions of the Defendants constitute negligence, intentional indifference to public safety, and gross negligence.

## SPECIFIC NEGLIGENCE & GROSS NEGLIGENCE OF THE RAILROAD DEFENDANTS

31.     The public has come to rely upon the following three basic components as essential to railroad crossing safety:

  a. A reasonable and timely audible warning of an approaching train;

  b. A reasonable and timely visual warning of an approaching train; and

  c. A safe place to cross the tracks.

32.     Railroad Defendants have actively worked to instill these fundamental beliefs into the motoring public, in part, through their utilization of the Operation Lifesaver program.

33.     In this case, none of those basic components were provided prior to the wreck.

34.     Railroad Defendants have a duty to exercise reasonable care in the design, maintenance and operation of train crossings, so as to avoid injuring members of the public. In this case, the Railroad Defendants breached this duty to the Decedents as follows:

  a. By the Railroad Defendants failing to exercise reasonable care in the

operation of trains over the Railroad Crossing;

b. By Railroad Defendants failing to properly maintain the crossing environment; and

c. By the Railroad Defendants failing to provide adequate warning of approaching trains.

35. The Railroad Defendants had a duty to exercise reasonable care in the maintenance of their crossing signal system, crossing surfaces and right of way in such a manner so as to avoid injuring or killing members of the public. In this case, Railroad Defendants breached their duty by failing to exercise reasonable care to properly maintain this crossing environment and otherwise, as follows:

a. failing to inspect and repair unsafe crossing conditions;

b. failing to require that their employees report unsafe conditions;

c. failing to maintain, inspect, and repair signs, signals, and markings at the Railroad Crossing;

d. failing to recognize, identify, and reduce "essentially local safety hazards;"

e. failing to cooperate with the appropriate governmental authorities to provide reasonably safe crossings;

f. failing to train their supervisors and employees concerning proper operating practice and rules;

g. improperly relying on the public relations campaign "Operation Lifesaver" rather than implementing their own comprehensive crossing safety program.

36. The aforementioned breaches of duty by the Railroad Defendants are more fully described below.

## FAILURE TO INSPECT AND REPAIR UNSAFE CROSSING CONDITIONS

37. The Railroad Defendants owned and operated the tracks that passed through the subject crossing and the right-of-way on both sides of it. The crossing is part of the general

Railroad Defendants' system of transportation.

38.    The Railroad Defendants had a duty to inspect the tracks and right-of-way, and correct or guard against any unsafe conditions in connection with the crossing, track and surrounding appurtenances.

39.    The Railroad Defendants also had a duty to ensure the tracks and right-of-way were in compliance with common law, state law, federal law, their own rules, rail industry standards and standards in the Manual on Uniform Traffic Control Devices (hereinafter "MUTCD"). If the tracks or right-of-way were found to be out of compliance with any of these, the Railroad Defendants had a duty to immediately bring them into compliance with the relevant laws and standards.

40.    Regulations specify many duties the Railroad Defendants had in connection with the crossing, tracks, and surrounding appurtenances. Those duties include, but are not limited to, the following:

> a.    The duty to inspect the crossing, track, and surrounding, appurtenances pursuant to 49 CFR §§ 213.233, 213.233, 213.234, 213.236 and associated sections;
>
> b.    The duty to designate qualified persons to inspect the tracks pursuant to 49 C.F.R. § 213.7(b);
>
> c.    The duty to immediately prepare and maintain a record of each inspection of its track to specify the track inspected, date of inspection location and nature of any defects or problems and identifying the appropriate remediation for such defects and problems pursuant to 49 C.F.R. § 213.241 and its own rules; and
>
> d.    the duty to immediately bring their track into compliance with track safety standards or halt operations over that track pursuant to 49 C.F.R. § 213.5.

41.    The crash described in this Complaint is a direct and proximate result of the negligence and gross negligence of the Railroad Defendants in failing to maintain the subject

---

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
Attorneys at Law
Raleigh, North Carolina

Case 4:20-cv-00224-M   Document 6   Filed 12/03/20   Page 9 of 26

crossing and their right of way in a reasonably safe condition.

42. The combination of conditions at this crossing required remedial actions to provide for safe operation of vehicular traffic and train traffic over this crossing. The conditions and characteristics at the Railroad Crossing were such that they presented an unreasonable risk of harm and rendered the crossing "extra-hazardous," "ultra-hazardous" and "unusually dangerous."

43. The unsafe crossing conditions, including a malfunctioning signal system, short storage and nearby intersection, and high-speed trains, were not properly identified, documented, reported, nor repaired by the Railroad Defendants. Instead, these hazardous conditions were allowed to exist as a direct violation of state law, the code of Federal Regulations and the Railroad Defendant's own rules. The Railroad Defendants knew or should have known that the existence of these hazardous conditions created an unsafe crossing in violation of these laws, rules, and regulations.

44. The Railroad Defendants knew, or should have known, that the unsafe crossing conditions described herein created a specific local hazard that should have been repaired, guarded against, or warned about. The Railroad Defendants did not notify the train crew on the Amtrak train that struck the Lyons' vehicle of any specific local hazard regarding the Railroad Crossing.

45. If the Railroad Defendants would have properly conducted track inspections at this crossing, the hazardous conditions at the Railroad Crossing would have been identified and remedied long before this crash, thereby preventing this crash.

## FAILURE TO REPORT UNSAFE CONDITIONS

46. Railroad Defendants had actual or constructive knowledge that all of the characteristics and conditions discussed in this Complaint make crossings more complex and more hazardous for motorists. Instead of correcting or accommodating for those hazardous conditions,

the Railroad Defendants have ignored their existence. As a result, its employees are aware that the Railroad Defendants do not want them to report hazardous conditions that are known to make crossings like this unsafe.

47.     Railroad Defendants' failure to require reporting of unsafe crossing conditions is a violation of their own General Code of Operating Rules that have been filed with the Federal Railroad Administration as a prerequisite to operate as a railroad in the United States. The failure to require reporting of these unsafe crossing conditions is also a violation of the federal regulations that require the Railroad Defendants to instruct their employees and Amtrak employees operating over its tracks to comply with operating rules.

### SIGNS, SIGNALS, AND MARKINGS

48.     At the time of this crash, the Railroad Defendants also owned, controlled and maintained the warning signs/devices and crossing signal system at the subject crossing, including the lights, gates, and approach circuits.

49.     The Railroad Defendants had a duty to inspect and maintain the crossing signs and signal system to ensure they were in compliance with their design plans, internal rules, and North Carolina and federal law. The Railroad Defendants also had a duty to ensure the crossing signal system complied with rail industry standards and standards in the MUTCD. Specifically, the Railroad Defendants had a duty to inspect, repair, and ensure the crossing signal system complied with federal regulations contained in 49 C.F.R. Part 234 and corresponding North Carolina law. Moreover, the Railroad Defendants had a duty to ensure that the crossing gates closed in timely manner to stop vehicular traffic upon a train's approach and provide a visual warning of an oncoming train.

50.     The crash described in this Complaint was a direct and proximate result of the

Railroad Defendants' failure to comply with the aforementioned duties, as follows:

a.  In failing to enforce its own rules, policies, and procedures relating to the Subject Crossing signal system that it created pursuant to 49 C.F.R. Part 234;

b.  In failing to properly train and instruct its signal maintenance and design employees to inspect, maintain and repair the subject crossing signal system to the minimum maintenance inspection and testing standards set forth in Part 234 and its internal rules, policies, and procedures that are not inconsistent with Part 234 (*see* C.F.R. § 234.1)

c.  In failing to work with state and local authorities to establish an open line of communication regarding the malfunctioning signal system and the need to protect the crossing or arrange for other remedial actions at the crossing until the signal system was repaired and working as designed, as set forth in 49 C.F.R. § 234.105(b)-(c), 234.106; 234.107(b)-(c);

d.  In failing to investigate and determine the nature of the Railroad Crossing signal malfunctions and provide a sufficient and timely warning to motorists of the malfunctioning signal system as set forth in 49 C.F.R. §§ 234.103; 234.105; 234.106; 234.107;

e.  In failing to implement effective Employee Notification Rules to Report Warning Signal Malfunctions, as set forth in 49 C.F.R. §§ 233.7, 234.101, and 234.305;

f.  In failing to promptly initiate and provide alternate means of actively warning highway users of approaching trains, as required pursuant to 49 C.F.R. §§ 234.103(b), 234.105(c), 234.106, and 234.107(c), as well Railroad Defendants' internal rules created pursuant to such regulations. The alternate means required pursuant to federal regulations are summarized in Appendix B to 49 C.F.R. part 234.

g.  In failing to maintain the Railroad Crossing to activate in accordance with the intended design of the warning system, as set forth in 49 C.F.R. §§ 234.205, 234.207, and 234.225;

h.  In failing to properly test the Railroad Crossing signal system, as set forth in 49 C.F.R. § 234.247 through 234.273;

i.  In failing to properly monitor the Railroad Crossing signal system for signal malfunctions and disabling remote monitoring devices;

j.  In failing to properly inspect and test the Railroad Crossing signal system for signal malfunctions pursuant to 49 C.F.R. §§ 234.249 through 234.271

and the Railroad Defendants' internal plans, rules, and standards created pursuant to this Part; and

k. As is more specifically set out below and as will further be proven through discovery and at trial.

51. Poor crossing signal system maintenance before this crash left the Railroad Crossing signal system out of adjustment and prone to malfunctioning. As such, the crossing signal system failed to provide the warning for which it was designed and, as a result, inadequate warning was provided of an approaching train. Therefore, the Railroad Defendants failed to comply with the aforementioned duties and, as a direct and proximate result thereof, malfunctioning railroad gates and inadequate warning systems existed at the subject crossing and were a direct and proximate cause of the crash that is the subject of this action.

52. The Railroad Defendants, their supervisors and employees had a duty to the Decedents to make and furnish good and sufficient crossings on public highways crossed by them and to keep such crossings in lawful repair at their own expense.

53. The State of North Carolina and local governments are authorized to construct, reconstruct, improve, or repair crossings, through financial participation with the Railroad Defendants, when accomplished by contract with an independent contractor, or when such work will be performed by employees of a local government action under direct supervision of the Railroad Defendants.

54. The Railroad Defendants and their supervisors must work with the State and local road authorities to evaluate crossing conditions and characteristics.

55. The Railroad Defendants and their supervisors also know they must work jointly with state and local road authorities to maintain a reasonably safe crossing that will allow for reasonably safe passage across their tracks.

56.     However, the Railroad Defendants and their supervisors have failed to work jointly with state and local road authorities by failing to share necessary information, failing to establish an open line of communication, and failing to engage in any effort to evaluate crossing conditions and characteristics at the Railroad Crossing.

57.     Instead, the Railroad Defendants and their supervisors elected to ignore the hazards caused and created by said conditions and characteristics.

58.     The Railroad Defendants and their supervisors know that they have superior knowledge and opportunity to evaluate crossings but have elected not to utilize this superior knowledge, opportunity, or any of their own resources to improve crossing safety.

59.     Accordingly, hazardous conditions at the Railroad Crossing were ignored and the crossing was not adequately protected with signal devices to provide a reasonable motorist with sufficient information for reasonably safe passage over the Railroad Crossing.

60.     The Railroad Defendants, their supervisors, and their employees owed a duty of care to the Decedents to properly identify, document, report, and remedy the hazardous track and crossing conditions.

61.     The Railroad Defendants breached that duty.

62.     As a direct and proximate result, the Railroad Defendants and their supervisors proximately caused the Decedents' injuries and death.

63.     The Railroad Defendants and their supervisors had a duty to Decedents to make and maintain all crossing signage, signals, markings, and related improvements in compliance with the MUTCD.

64.     The devices at this crossing were not in compliance with the MUTCD at the time of the crash.

65.     Because the devices at the Railroad Crossing were not in compliance with the MUTCD at the time of the crash, the Railroad Defendants and their supervisors breached their duty to Decedents.

66.     The failure to comply with MUTCD standards was one of the characteristics of the Railroad Crossing that contributed to the overall unsafe condition of the Railroad Crossing and was one of the contributing factors that proximately caused this crash.

67.     Accordingly, these actions or inactions and the breach of duty by the Railroad Defendants and their supervisors proximately caused the Decedents' injuries and death.

68.     The Railroad Defendants and their supervisors had a duty to Decedents to install and properly locate adequate warning devices at the crossing, to include automatic gates with flashing signals. The Plaintiffs incorporate by reference as fully as if set out verbatim the provisions of 23 C.F.R. § 646.214(b)(3)(i).

69.     Federal law requires the installation of properly located and functional lights and gates or other cost-effective warning devices at the crossing. Such an installation would not unreasonably burden the Railroad Defendants or interstate commerce.

70.     Pursuant to 23 C.F.R. § 646.214(b)(3)(i), the warning devices at the crossing should have included properly located and properly functioning, "automatic gates with flashing light signals" because of, among other things, the following conditions:

    a.      There is a high-speed train operation combined with moderate volumes of both motor vehicle and railroad traffic; and

    b.      There is a moderately high-volume of train movements.

71.     Despite possessing knowledge that conditions existed at the Railroad Crossing requiring installation of properly located and properly functioning automatic gates with flashing

light signals, the Railroad Defendants and their supervisors failed to install properly functioning automatic gates with flashing light signals and breached their duty owed to Decedents.

72.     The failure of the Railroad Defendants and their supervisors to comply with 23 C.F.R. § 646.214(b)(3)(i) by installing adequate warning devices at the Railroad Crossing, including properly located and functioning automatic gates with flashing light signals, was one of the characteristics of the Railroad Crossing that contributed to the overall unsafe condition of the crossing and was one of the contributing factors that proximately caused this crash.

73.     Accordingly, these actions or inactions and the breach of duty by the Railroad Defendants and their supervisors proximately caused Decedents' injuries and death.

74.     The Railroad Defendants and their supervisors had a duty to Decedents to install properly located, functioning lights and gates or other cost-effective warning devices which would have prevented this crash.

75.     The Railroad Defendants and their supervisors know that properly located, functioning lights and gates are affordable, cost-effective guarding devices that have proven to be more than 90% effective in preventing railroad crossing collisions.

76.     Despite this knowledge, the Railroad Defendants and their supervisors have done nothing to promote the proper usage of said lights and gates or other cost-effective active warning devices.

77.     Instead, the Railroad Defendants have engaged in conduct that has resulted in fewer installations of these proven safety devices at crossings.

78.     The Railroad Defendants have refused to supplement the federal funding of active warning devices with any meaningful safety program of their own.

79.     The Railroad Defendants have delayed the installation of these proven safety

devices, engaged in conduct that unnecessarily increased the costs of these proven safety devices, and have diverted funds that have been used to install these devices.

80. Because the Railroad Defendants delayed the installation of these proven safety devices, engaged in conduct that unnecessarily increased the costs of these proven safety devices, and diverted funds that should have been used to install these devices, the Railroad Crossing did not have functioning gates or other cost effective warning devices. As a result, the Railroad Defendants and their supervisors breached their duty to Decedents.

81. The failure of the Railroad Defendants and their supervisors to insure properly located and functioning lights and gates or other cost effective warning devices which would have prevented this crash was one of the characteristics of the Railroad Crossing that contributed to the overall unsafe condition of the crossing and was one of the contributing factors that proximately caused this crash.

82. Accordingly, the actions or inactions and the breach of duty by the Railroad Defendants and their supervisors proximately caused Decedents' death.

## SAFETY HAZARDS

83. At the time of this crash, the conditions of the Railroad Crossing created "essentially local safety hazards," that rendered the crossing "unsafe." Plaintiffs refer to and reincorporate by reference the sections of this Complaint referring to local safety hazards.

84. In conducting train operations, the Railroad Defendants and their supervisors owed a duty of care to Decedents to recognize "essentially local safety hazards" at the Railroad Crossing, to instruct employees on how to identify "essentially local safety hazards," and to warn of their existence.

85. The Railroad Defendants and their supervisors failed to recognize "essentially local

safety hazards," to instruct employees how to identify these hazards, to take reasonable steps to reduce these hazards, and to warn of their existence.

86.     The failure of the Railroad Defendants and their supervisors to recognize "essentially local safety hazards," to instruct employees how to identify these hazards, to take any reasonable steps to reduce these hazards, and to warn of their existence was one of the contributing factors that proximately caused Decedents' injuries and death.

87.     These actions and/or inactions and breach of duty of the Railroad Defendants and their supervisors proximately caused Decedents' injuries and death.

## FAILURE TO COOPERATE WITH GOVERNMENTAL AUTHORITIES

88.     The Railroad Defendants had a duty to work jointly with the NCDOT and local authorities to provide reasonably safe crossings. This duty necessarily required the Railroad Defendants, the NCDOT, and local authorities to work together to ensure the Railroad Crossing was reasonably safe.

89.     The Railroad Defendants failed to work jointly with the NCDOT and local authorities to maintain a crossing that would allow for reasonably safe passage across the tracks.

90.     The Railroad Defendants failed to share necessary information, failed to establish an open line of communication, and failed to engage in a joint comprehensive effort to evaluate the specific, individual, and unique crossing conditions and characteristics at the Railroad Crossing.

91.     If the Railroad Defendants would have worked jointly with the NCDOT and the local authorities to evaluate the crossing to ensure it would allow for reasonably safe passage across the tracks, the hazardous conditions at the Railroad Crossing would have been identified and remedied long before this crash, thereby preventing the deaths of the Decedents.

## TRAINING, INSTRUCTION, AND MANAGEMENT

92.     The Railroad Defendants and their supervisors had a duty to Decedents to instruct the Railroad Defendants' employees concerning proper operating practices and operating rules. The Plaintiffs incorporate by reference as fully as if set out verbatim the provisions of 49 C.F.R. §§ 217.1, 217.11, 218.11 and other rules and regulations.

93.     The Railroad Defendants and their supervisors owed a duty to the public to properly instruct supervise and monitor employees to protect the public from unsafe operating practices and conditions.

94.     The Railroad Defendants breached their duty to the public to protect the public from unsafe practices and conditions by failing to properly instruct, supervise, and monitor their employees concerning proper operating practices and conditions.

95.     The Railroad Defendants and their supervisors have intentionally instructed train crews and other employees that there is nothing the Railroad Defendants can do to prevent crashes or reduce risks to the public, despite the knowledge that such an assertion is false.

96.     The failure of the Railroad Defendants and their supervisors to properly instruct, supervise, and monitor the Railroad Defendants' employees concerning proper operating practices and conditions was one of the contributing factors that proximately caused this crash. These actions or inactions and the breach of duty by the Railroad Defendants and their supervisors proximately caused Decedents' injuries and death.

97.     The Railroad Defendants and their supervisors owed a duty to Decedents to utilize a systems approach to provide a comprehensive method for addressing safety issues at crossings but have refused to implement any system safety program for crossing safety.

98.     The Railroad Defendants and their supervisors failed to utilize a systems approach

to provide a comprehensive method for addressing safety concerns at crossings, refused to implement any system program to ensure crossing safety, and deliberately ignored hazards that would be identified under a systems-based approach.

99. The Railroad Defendants and their supervisors have purposely neglected training personnel to identify and correct unsafe conditions for the purpose of saving money on maintenance and capital improvements.

100. The failure of the Railroad Defendants and their supervisors to: (a) utilize a systems approach to provide a comprehensive method for addressing safety issues at crossings, (b) implement any system safety program for crossing safety, (c) identify hazards that would be readily identified in a system safety analysis (which would have prevented this crash), and (d) provide training for personnel to identify and correct unsafe conditions for the purpose of saving money on maintenance and capital improvements—were characteristics of the Railroad Defendants' training, instruction and management that contributed to the overall unsafe condition of the Railroad Crossing and were contributing factors that proximately caused this crash.

101. Accordingly, these actions or inactions and the breach of these duties by the Railroad Defendants and their supervisors proximately caused Decedents' injuries and death.

## OPERATION LIFESAVER

102. Instead of designing or implementing a comprehensive crossing safety program, the Railroad Defendants rely on an industry-wide public relations campaign, "Operation Lifesaver," that serves the special interests of the Railroad Defendants and railroad industry by disseminating the objectively false notion that there is nothing the Railroad Defendants can do to prevent crashes.

103. This program is designed to deny and minimize any responsibility on the part of

the Railroad Defendants for crossing crashes by shifting the blame to the public for virtually all crossing accidents.

104. The program is used in lieu of a true crossing safety program that is based upon sound system safety principles. The Railroad Defendants' approach to crossing safety has resulted in obscuring the cause of crossing crashes.

105. The Railroad Defendants have misrepresented their Operation Lifesaver public relations campaign to be a safety program in an attempt to obscure the fact that the Railroad Defendants actually have no comprehensive crossing safety program of their own.

106. The Railroad Defendants have used the Operation Lifesaver program to indoctrinate the Railroad Defendants' employees with a belief system that there is nothing they can do to improve public safety at crossings.

107. The Railroad Defendants stereotype motorists involved in crossing crashes as unreasonable risk takers and condition their employees to ignore the true root causes for crossing crashes. Accordingly, employees of the Railroad Defendants have not reported hazardous conditions at the Railroad Defendants' crossings.

108. The Railroad Defendants have actual knowledge that they are endangering the public by allowing the hazardous conditions and practices that contributed to this crash.

109. The Railroad Defendants have utilized the Operation Lifesaver program to divert attention from their own culpability for knowingly allowing these hazardous conditions and practices to exist.

110. Since its incorporation in August of 1986, Operation Lifesaver has actively targeted the public and the transportation industry with a long-term advertising campaign that promotes its self-serving agenda.

111. Operation Lifesaver and the Railroad Defendants have jointly participated in this campaign for the purpose of shaping opinions and behavior.

112. A proximate cause of this crash was the success of Operation Lifesaver and the success of the Railroad Defendants in diverting attention from the true root causes of crossing crashes.

## INTENTIONAL, FRAUDULENT, MALICIOUS OR RECKLESS DISREGARD FOR SAFETY

113. The Railroad Defendants' customs, policies, and conduct in the aforementioned allegations were intentional, fraudulent, malicious, or reckless and demonstrate a deliberate disregard for the safety of Decedents and the motoring public. The Railroad Defendants have intentionally elected to disregard legal duties owed to Decedents and the public. Those actions proximately caused Decedents' injuries and death.

114. The Railroad Defendants knew and/or had information from which they should have known that each separate aspect of their conduct, as described herein, created an unreasonable and unjustifiable risk of substantial injury to Decedents and involved a high probability that harm would result, and such conduct, in light of this knowledge, demonstrates an intentional, fraudulent, malicious, or reckless disregard for the safety of Decedents and the motoring public. Those actions proximately caused Decedents' injuries and death.

115. The Railroad Defendants' customs, policies, and conduct alleged in this Complaint establish that the Railroad Defendants deliberately proceeded to act in conscious or malicious disregard of the safety of the motoring public or acted with indifference to the safety of the motoring public, and such conduct shows conscious disregard for the safety of Decedents. These actions proximately caused Decedents' injuries and death.

116. The Railroad Defendants demonstrated a pattern of willful and wanton conduct by

═══════════════════════════════════════════

**HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.**
Attorneys at Law
Case 4:20-cv-00224-M   Document 1-4   Filed 12/03/20   Page 22 of 26
Raleigh, North Carolina

intentionally failing to enforce their own policies and procedures, as well as federal and state laws governing the safe operation of trains. This pattern of conduct has condoned and ratified the conduct of their employees and agents to disregard duties owed to Decedents. Those actions proximately caused Decedents' injuries and death.

117. The Railroad Defendants made a deliberate decision that it will be cheaper to pay compensatory damages for claims resulting from car-train crashes than to properly maintain their crossings, upgrade their crossings, and properly train their employees on issues involving crossing safety.

118. The Railroad Defendants' conduct alleged in this Complaint demonstrates an intentional, fraudulent, malicious or reckless disregard for the safety of Decedents and the motoring public.

119. Those actions proximately caused Decedents' injuries and death.

## NEGLIGENCE & GROSS NEGLIGENCE OF THE LOCAL AUTHORITIES

120. Defendant Town of Whitakers, North Carolina, Defendant Nash County, North Carolina, and Defendant Edgecombe County, North Carolina will hereinafter be referred to as the "Local Authorities."

121. The Local Authorities owed a duty to the public to use reasonable care in maintaining, repairing, inspecting, and reporting any and all problems with warning devices, signaling devices, and preemption devices with respect to the Railroad Crossing involved in this action.

122. The Local Authorities breached these duties by, and among other things, failing to reasonably report malfunctioning warning and preemption devices at the crossing, failing to

take any sort of corrective action to remedy hazardous conditions at the Railroad Crossing, negligently maintaining and controlling warning devices, and as will be otherwise proven at trial.

123. The Local Authorities failed to cooperate with the Railroad Defendants in monitoring, maintaining, and repairing the Railroad Crossing as set forth elsewhere herein.

124. As a direct and proximate result of the Local Authorities' negligence and gross negligence, the Local Authorities caused, created, maintained, and allowed the dangerous conditions involved in causing this crash to exist at the Railroad Crossing, directly resulting in the Decedents' injuries and deaths.

## COMPENSATORY & PUNITIVE DAMAGES

125. As a direct and proximate result of all of the Defendants' before alleged negligence and gross negligence, Decedents suffered painful injuries that led to their violent deaths when the train struck their vehicle on January 14, 2018. Plaintiffs are therefore entitled to recover all damages set forth in N.C.G.S. § 28A-18-2 from all of the Defendants, jointly and severally, including but not limited to:

- a. Decedents' medical expenses incident to this crash and injuries incurred therein;

- b. Compensation for Decedents' pain and suffering;

- c. The reasonable funeral expenses of Decedents; and

- d. The present monetary value of Decedents to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of reasonably expected:

    i. Net income of Decedents;

    ii. Services, protection, care and assistance of Decedents, whether voluntary or obligatory, to the persons entitled to the damages recovered; and

    iii. Society, companionship, comfort, guidance, kindly offices and

advice of Decedents to the persons entitled to the damages recovered.

126.    As a direct and proximate result of all the Defendants' above stated negligence and gross negligence, Plaintiffs are entitled to recover in excess of twenty-five thousand ($25,000.00) in general and special damages for the wrongful death of Decedents.

127.    The actions of the Railroad Defendants rise to the level of willful and wanton conduct, in that they acted with a gross disregard to the rights and safety of the public, when they had actual knowledge of highly dangerous conditions at the Railroad Crossing and failed to take any actions whatsoever to remedy the same. Moreover, the Railroad Defendants encouraged and allowed a policy of indifference to violations of federal regulations and other industry standards as further stated herein. Accordingly, Plaintiffs are entitled to an award of punitive damages against the Railroad Defendants.

**WHEREFORE**, Plaintiffs pray of the Court as follows:

1. That Plaintiffs have and recover from all of the Defendants, jointly and severally, general and special damages, including but not limited to all measures of damages set forth in N.C.G.S. § 28A-18-2, which are in excess of twenty-five thousand dollars ($25,000.00);

2. That Plaintiffs have and recover from each entity of the Railroad Defendants punitive damages in the amount of two hundred and fifty thousand dollars ($250,000.00) or three times compensatory damages, whichever amount is greater;

3. That the costs of this action, including deposition fees and expert fees, if applicable, be taxed to the Defendants;

4. That Plaintiffs recover pre and post judgment interest; and

HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.
Attorneys at Law

5. For such other and further relief as this court deems just and proper.

This the 10th day of December, 2019

HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.

By: _____

Robert H. Jessup (N.C. Bar No. 42945)
B. Joan Davis (N.C. Bar No. 17379)
Post Office Box 12347
Raleigh, North Carolina 27605
Telephone: (919) 821-7700
*Attorneys for the Plaintiffs*